## Guidubaldi v. Guidubaldi
### Case No. 88-P-2013
### Portage County, (11th)
### Decided January 12, 1990
[Cite as 1 AOA 432]

*Atty. Joseph Giulitto, 222 West Main Street, P.O. Box 350, Ravenna, Ohio 44266, for Plaintiff-Appellee.*

*Atty. Peter T. Cahoon, 1010 Citicenter Building, 146 South High Street, Akron, Ohio 44308, for Defendant-Appellant.*

FORD, J.

Appellee, Betty Guidubaldi, filed for divorce from appellant, John Guidubaldi, on July 30, 1987. Appellant, on September 8, 1987, filed an answer and counterclaim, but later withdrew the counterclaim. The matter proceeded to trial on March 2, 1988.

At trial, appellee, age 50, testified that she and appellant had been married since 1960. During the first few years of the marriage, she worked as a secretary while appellant obtained his bachelors degree from Kent State University ("Kent"). Appellant continued his educational pursuits and received masters and doctorate degrees in 1964 and 1969 respectively. Appellee obtained a bachelors degree in 1979 and a masters in 1983.

Appellant has been employed as a faculty member at Kent since 1969 and earns $54,000 as a full professor. Appellant also was employed as a consultant and expert witness, earned revenues for his contribution as an author, and maintained a private psychology practice, although the practice was "in the process of winding down." On the other hand, appellee has worked as a substitute teacher for over five years on various occasions and at a travel agency. Prior to trial, she had been attempting to secure a full time teaching position, but had been unsuccessful.

Appellee also testified that in the summer of 1987, appellant had withdrawn $50,000 from the couple's savings account, using $15,000 to pay off the loan on his car, distributing $10,000 to each of their three children, and giving an additional $5,000 to one of them as a graduation gift. She stated that they had discussed giving "something" to the children, but she was unaware that he had done so until sometime after the act.

Appellant, who is 49 years old, testified that he had reduced his workload following surgery for lung cancer in May of 1986. (Appellant subsequently discovered he did not have lung cancer.) He indicated he had discussed with appellee the gifts to the children, but only withdrew the funds after appellee had withdrawn $1,000 from their joint savings account without his knowledge.

After hearing the evidence, the judge granted the divorce and awarded appellee sustenance alimony and divided the marital assets. As part of that division, the trial judge valued the savings account at $69,000, and directed the appellant's State Teacher's Retirement System (STRS) benefits be divided by a Qualified Domestic Relations Order (QDRO).

Appellant timely appealed, raising the following assignments of error:

"1. The trial court committed prejudicial error by ordering that defendant-appellant's State Teachers Retirement System Benefits be divided by means of Qualified Domestic Relations Order, since both state and federal law specifically preclude such an execution upon defendant-appellant's benefits.

"2. The trial court committed prejudicial error by awarding plaintiff-appellee alimony subject to further order of the trial court.

"3. The trial court committed prejudicial error by holding that gifts by defendant to the children of the parties were marital assets.

"4. The trial court committed prejudicial error by including estimated STRS contributions for defendant-appellant, for the period between filing of the divorce action herein and the judgment of divorce, since the marriage in this case should be regarded as terminated de facto when plaintiff-appellee filed for divorce.

"5. The trial court committed prejudicial error by setting an incorrect value upon defendant-appellant's interest in his STRS

account.

"6. The trial court committed prejudicial error by failing to consider the tax consequences in determining the value of defendant-appellant's interest in his VALIC annuity accounts."

In the first assignment appellant alleges that his STRS benefits are not subject to division pursuant to a QDRO. Appellee concedes that pursuant to R.C. 3307.71 these funds are not subject to such distribution. However, it should be noted that while the funds are not subject to distribution, they are marital assets which are to be considered by the trial court in determining an equitable division of the parties' property. As such, the court should re-adjust the marital distribution accordingly. Therefore, the first assignment is with merit.

The first assignment is sustained.

In his second assignment, appellant challenges the award of sustenance alimony. He argues it should be rehabilitative and limited to a period of three years.

This court's role in reviewing such an order is limited to whether the court abused its discretion in making its award. Absent a showing of abuse this court cannot reverse. See, *Zimmie* v. *Zimmie* (1984), 11 Ohio St. 3d 94, at 98.

In its entry, the court indicated that it considered the factors pursuant to statutory guidelines contained in R.C. 3105.18. In so doing, the judge properly considered these factors in awarding sustenance alimony. Further, the disparity is not so significant as to suggest an abuse of discretion.

Additionally, it should be noted that the court may award permanent sustenance alimony with conditions. "Permanent sustenance alimony is in the nature of support, and the attachment of conditions to its continuance is reasonable considering that the need for such support may change, thus altering the payor's obligation. Such conditions are not acceptable, however, as limitations on the division of marital property." *Zimmie, supra,* syllabus of the court. Further, under such a scenario, the trial court retains jurisdiction to modify such an award if the court expressly reserves jurisdiction to modify. *Ressler* v. *Ressler* (1985), 17 Ohio St. 3d 17, syllabus of the court.

In this cause, the court did specifically retain jurisdiction, and thus had the ability to modify the award if necessary.

This assignment is without merit.

In the third assignment, appellant argues that the $35,000 given to the children should not be considered a marital asset. He maintains that he did not give the money away to defraud the appellee, and since at the time of the "gift" he was not subject to a restraining order, his actions were not illegal.

The decision of what shall be included as "marital assets" rests within the sound discretion of the trial court. In addition, the court "must have discretion to do what is equitable upon the facts and circumstances of each case." *Cherry* v. *Cherry* (1981), 66 Ohio St. 2d 348, at 355.

A similar issue was addressed in *Hock* v. *Hock* (Feb. 10, 1989), Lake App. No. 13-021, unreported. In *Hock, supra,* the wife had gone on a cruise to Europe, at the cost of approximately $4,000 prior to the parties' separation, with the husband's full knowledge and consent. The trial court, though, included the cost of the trip in the balance of the couples' joint bank account. This court affirmed, relying on the referee's belief that the money was borrowed from the account. *Hock,* at 10-11.

A like conclusion was obtained in *Dooling* v. *Dooling* (1982), Tuscarawas App. No. C.A. 1619, unreported. In *Dooling, supra,* the appellant had transferred three automobiles to his mother and had withdrawn $4,000 from the savings account.

The *Dooling* court held that these transfers, even though they occurred one month before separation and the filing of the divorce action, nonetheless were still to be considered marital assets subject to division.

The court citing from *Berish* v. *Berish* (1982), 69 Ohio St. 2d 318, stated:

> "'The choice of a date as of which assets available for equitable distribution should be identified and valued must be dictated largely by pragmatic considerations * * * It is the equitableness of the result reached that must stand the test of fairness on review.'
>
> "*Berish* v. *Berish, supra.*
>
> "Under the circumstance of the instant case, pragmatic considerations and equitableness lead us to conclude, as it did the trial court, that the effort of the husband to alienate property immediately prior to the separation and divorce should be considered by the trial court in its

division of property." *Dooling*, at 3.

Applying the same rationale contained in *Cherry*, *Hock*, and *Berish*, we find this assignment without merit.

In the fourth assignment of error, appellant challenges the court's date for determining valuation of the pension fund. This issue was addressed in *Berish*. The court indicated that the trial court is:

"* * * permitted to utilize alternative valuation dates, such as the time of permanent separation or de facto termination of the marriage, where reasonable under the facts and circumstances presented in a particular case. In this fashion, the trial court will have the necessary flexibility to exercise its discretion in making truly equitable awards consistent with legitimate expectations of the parties." *Berish*, *supra* at 321.

As such, the court is able to determine which date to utilize as the proper "valuation date."

In the case at bar, the trial court determined that the valuation date would be the date of the hearing. This has been held not to be an abuse of discretion. *Frantz* v. *Frantz* (Feb. 19, 1988), Hancock App. No. 5-87-2, unreported. Additionally, the parties stipulated that the STRS account had increased $4,000 since the filing of the complaint for divorce. The court then had the option of adjusting the figures by that amount.

The fourth assignment is without merit.

The appellant argues in the fifth assignment of error that the present value of his pension fund, the STRS account, should have been limited to his contribution to the fund or $47,016.69. Plaintiff's Exhibit "C" indicated that the appellant's total accumulated contributions were $60,868.32. This included the $47,016.69 he had contributed plus the "picked up contributions" of $13,851.63.

Noticeably absent from the record is the requisite evidential identification of the exhibit. Appellee identified the document as appellant's "State Teacher's Retirement Program." However, the witness, appellee, was unable to indicate what the exhibit purportedly represented. Further, appellant testified that the figures contained on the paper represented his contribution (the $47,000) to the plan and that the other figure (the $13,000) were "picked up contributions." This was the extent of the testimony on this item.

Neither party presented evidence as to the value of the pension benefits. In addition, the court indicated that the exhibit may not have represented "present value" of appellant's interest in the account, yet the court summarily assigned the $64,000 as the value. This court finds this assignation to be an abuse of discretion.

In *Willis* v. *Willis* (Sept. 27, 1985), Geauga App. No. 1208, unreported, this court adopted the position that the trial court erred by "fail[ing] to assign a specific present value to appellee's pension fund." *Willis*, *supra*, at 4. More recently in *Kaechele* v. *Kaechele* (1988), 35 Ohio St. 3d 93, and in *Holcomb* v. *Holcomb* (1989), 44 Ohio St. 3d 128, the Supreme Court has endorsed this proposition:

"A vested pension plan accumulated during marriage is a marital asset and must be considered in conjunction with other factors listed under R.C. 3105.18 and other relevant factors in dividing marital assets and liabilities to ensure that the result reached is equitable." *Holcomb*, *supra*, syllabus.

As noted in *Willis*, one such method of ensuring an equitable division of assets is determining the "present value" of the assets. However, contrary to the dictates in *Willis*, in this cause, there is insufficient evidence to determine the present value of the fund.

While not the exclusive method, Barth Goldberg outlines one procedure to obtain present value:

"* * * [T]he chosen expert will follow necessary steps to find a plan's present value, which will be submitted by him to the court at time of trial. How he achieves this goal can best be understood by breaking down the steps in valuation. Therefore in step number one the actuary determines the *value of the retirement benefits, calculated as a lump sum, as of the date the employee is to retire.*

"Secondly, the present value of this sum must then be ascertained. Three discount factors must be considered, as follows:

"a. *The interest* - one must determine what sum invested today would yield the particular amount at maturity depending

upon the 'fair' rate of interest, which is an evidentiary matter for the trial court.

"b. *Mortality factor* - the risk factor which exists must be considered, that is, the possibility that the employee may not survive to collect the benefits. For this purpose standard actuarial tables are available.

"c. *Vesting factors* - Some plans will require additional employment as a condition for eligibility. To account for this variable, many actuaries suggest that a reduction by the percentage of required additional employment is a suitable method.

"Lastly, the final figure must be adjusted for a marital value to the nonemployee's share." Goldberg, Valuation of Divorce Assets, (1984) 251, Section 9.5. (Emphasis added.)

The record is devoid of any computation or indication that the proffered figures resulted from any such computation. As such, the court erred in determining the present value of the pension fund on the face of the evidence present.

This assignment is with merit.

In the sixth assignment, appellant argues that the court failed to consider the tax consequences of appellant's VALIC accounts. The proposed tax consequences assume early withdrawal of the account.

Nothing in the record suggests appellant will need to withdraw these monies prematurely. These tax consequences are only speculative.

As such, the court need not participated in conjecture and speculation to determine the possible tax consequences of a potential action. See *Day* v. *Day* (March 31, 1988), Franklin App. No. 87-AP-768, unreported.

This assignment is without merit.

For the foregoing reasons, the judgment of the trial court is affirmed as to the second, third, fourth and sixth assignments of error, and reversed and remanded for further proceedings consistent with this opinion as to the first and fifth assignments of error.

CHRISTLEY, P.J., MAHONEY, J., Concur.