DECISION AND JUDGMENT ENTRY
This case is before the court on appeal from the Lucas County Court of Common Pleas, Domestic Relations Division, which entered a judgment entry granting the parties a divorce and dividing the parties' marital assets. Both parties have appealed.[1] For the reasons that follow, we find that the decision of the Lucas County Court of Common Pleas, Domestic Relations Division, should be affirmed in part and reversed in part.
The parties were married in 1963. Appellant left the marital residence and the parties thus separated in June 1991. Appellant states, and appellee does not dispute, that appellant filed a petition for divorce in the Lucas County Court of Common Pleas, Domestic Relations Division, in 1991, in case number DR91- 1516. At that time, the children born of the marriage were emancipated. In 1993, with her divorce petition pending, appellant filed a civil suit against appellee in the Lucas County Court of Common Pleas, General Division, claiming that appellee defrauded her in the purchase of Twinwall Village, a mobile home park in which appellee was a partner. This case was twice in the general division and was twice appealed to this court. The Supreme Court of Ohio declined jurisdiction. Ultimately, appellant was not successful in her claims against appellee.
In 1995 appellant dismissed her petition for divorce and re-filed her petition on July 6, 1995, under the instant case number.[2] As grounds for divorce, appellant alleged in her petition that she was a "good and dutiful wife but that the Defendant [appellee] has been guilty of gross neglect of duty and extreme cruelty and Plaintiff [appellant] further states that the parties are incompatible * * *." In 1998, appellee filed a counterclaim for divorce on the grounds of incompatibility.
The case came up for final hearing on September 27, 1999. The court filed its decision on December 20, 1999, and that decision was reduced to judgment in a judgment entry filed on February 9, 2000. (A judgment entry nunc pro tunc was entered on March 1, 2000 solely for the purpose of adding the legal description of the parties' marital home.) In its decision and judgment entry, the court divided the parties' property as follows:
 (1) The trial court granted the marital home at 3118 Glenn Street, with equity of approximately $69,135, to appellee.
 (2) The trial court granted all interest in Twinwall Village, the mobile home park, to appellee. The court found that the value of this asset, without consideration of any tax consequence, was $96,353.
 (3) The trial court ordered that appellee's Jones 
Henry pension plan shall be the subject of a QDRO and that appellant shall select the option.
 (4) The trial court ordered that appellant have all interest in five Shearson Lehman accounts having a cumulative value of $76,288.13.
 (5) The trial court ordered appellee to pay to appellant $44,600 plus six percent simple interest in ten annual installments beginning in February 2000.
 (6) The trial court discontinued spousal support from appellee to appellant, finding that appellee had overpaid spousal support in the amount of $6,712.
In making these orders, the trial court found that the property should be valued at the time of the separation, June 1991, since appellant's lawsuit in the general division impeded prompt resolution of the divorce action. The court also noted that, since the time of the separation, the parties had continuously lived apart, did not attempt reconciliation, and separately pursued their own business and personal affairs.
The parties appeal from this judgment. Appellant sets forth two assignments of error:
 "1. The Trial Court erred in reducing the grounds for divorce from `Gross Neglect of Duty' and `Extreme Cruelty' to `Incompatibility.'
 "2. The Trial Court erred in using the length of time for the litigation in the General Division as a basis for setting the length of the marriage."
Appellee sets forth the following three cross-assignments of error:
 "I. THE LOWER COURT ERRED IN NOT GIVING RICHARD A SET-OFF AGAINST THE PROPERTY DIVISION MONIES AWARDED TO KAREN EQUAL TO HIS SPOUSAL SUPPORT OVERPAYMENT.
 "II. THE LOWER COURT ERRED IN FAILING TO TAKE INTO ACCOUNT THE TAX CONSEQUENCES TO RICHARD IN THE EVENT THAT HE HAS TO SELL HIS INTEREST IN TWINWALL IN ORDER TO PAY-OFF THE MONIES AWARDED TO KAREN.
 "III. THE LOWER COURT ERRED IN REFUSING TO AWARD RICHARD A DISTRIBUTIVE AWARD AGAINST KAREN EQUAL TO THE MONIES HE WAS FORCED TO PAY IN THE FORM OF ATTORNEY FEES TO DEFEND HIMSELF IN THE SUIT FILED BY KAREN IN THE GENERAL DIVISION."
We address all of these assignments of error for abuse of discretion. See Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355. The Supreme Court of Ohio has stated that "[t]he term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, quoting State v. Adams (1980),62 Ohio St.2d 151, 157.
In her first assignment of error, appellant contends that the trial court erred in granting the divorce on the grounds of incompatibility instead of gross neglect or extreme cruelty. R.C. 3105.01 states the grounds for divorce in Ohio. Among the grounds are extreme cruelty, R.C. 3105.01(D), gross neglect of duty, R.C. 3105.01(F), and incompatibility, "unless denied by either party," R.C. 3105.01(K). The trial court found that the parties were incompatible, a fact to which both parties agreed at the hearing. However, appellant contends that, since she testified that there were "several violent incidents" in her marriage that caused her to be in fear of her safety, the court should have granted the divorce on the grounds of extreme cruelty or gross neglect of duty.
While any definition of the terms "gross neglect of duty" or "extreme cruelty" is difficult, several courts have defined these terms as follows:
 "Extreme cruelty consists of acts and conduct which destroy the peace of mind and happiness of one of the parties to the marriage and thereby render the marital relationship intolerable. Gross neglect of duty is the failure of one party to perform a marital duty attended by circumstances of indignity or aggravation, and depends on the particular circumstances of the case." (Citations omitted.) Hunt v. Hunt (1989), 63 Ohio App.3d 178, 181, quoting Pearson v. Pearson (Feb. 21, 1985), Montgomery App. No. 9097, unreported.
See, also, Robinson v. Robinson (Oct. 9, 1992), Wood App. No. 91WD122, unreported, motion overruled (1993), 66 Ohio St.3d 1423.
At the final hearing, appellant and her mother made reference to several violent incidents in the marriage, but they did not elaborate. However, both appellant and appellee conceded that they were incompatible. Based on the record, we cannot say the trial court abused its discretion in finding that the evidence established grounds for incompatibility and not extreme cruelty or neglect of duty. Moreover, even if the court erred, that error was harmless since R.C. 3105.171, the statute dealing with property division, does not list fault as a factor for the court to consider in dividing up property. See Lemon v. Lemon
(1988), 42 Ohio App.3d 142, 145. Accordingly, appellant's first assignment of error is found not well-taken.
In her second assignment of error, appellant argues that the trial court erred in valuing the property from the time of the separation instead of the time of the final hearing. According to the statute, marital property is various types of property acquired "during the marriage." R.C. 3105.171(A)(3). "During the marriage" is defined as follows:
 "(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;
 "(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, `during the marriage' means the period of time between those dates selected and specified by the court." R.C. 3105.171(A)(2).
In this case the trial court determined that, since appellant's separate lawsuit in the general division made prompt resolution of the divorce action impossible, the date of the parties' separation was the most equitable date on which to value the property. In doing so, the court also noted that the parties had lived separately since appellant first left the home, they did not attempt reconciliation, and they each pursued their own separate business and personal affairs, making the separation date the date of the de facto termination of the marriage. Based on the record, we cannot say that the trial court abused its discretion in valuing the property at the date of the separation. SeeBerish v. Berish (1982), 69 Ohio St.2d 318, 321 ("In order to do equity, a trial court must be permitted to utilize alternative valuation dates, such as the time of permanent separation or de facto termination of the marriage, where reasonable under the facts and circumstances presented in a particular case.") See, also, Gullia v. Gullia (1994),93 Ohio App.3d 653, 666, appeal dismissed (1994), 70 Ohio St.3d 1409. Appellant's second assignment of error is found not well-taken.
Appellee, in his first cross-assignment of error, contends that the trial court should have awarded him a set-off for the amount of spousal support he overpaid to appellant ($6,712). Appellee raised this issue in the proceedings below, and the trial court acknowledged the overpayment on at least two occasions. In the judgment entry of June 26, 1996, the trial court stated that the overpayment would be continued for resolution until the final hearing. In the judgment entry of February 9, 2000, the trial court noted the overpayment but did not make an order regarding it. Pursuant to App.R. 12(C), we find that this portion of the February 9, 2000 judgment entry is against the manifest weight of the evidence, and we enter the judgment that the trial court should have entered: that appellee should have received a set-off for the amount of spousal support that he overpaid. This set-off can most easily be taken against the cash award that the court ordered appellee to pay to appellant ($44,600). It is therefore ordered that the judgment in favor of appellant for $44,600 plus six percent simple interest is amended to $37,888 plus six percent simple interest ($44,600 less the $6,712 overpayment), to be paid in ten annual installments.[3] Appellee's first cross-assignment of error is found well-taken.
Appellee contends in his second cross-assignment of error that the trial court erred in not taking tax consequences into account "in the event that" he must sell his interest in Twinwall to pay appellee the amount he owes her. R.C. 3105.171 states the factors the trial court shall consider in dividing marital property. R.C. 3105.171(F)(6) provides that the trial court shall consider "[t]he tax consequences of the property division upon the respective awards to be made to each spouse." However, several cases note that a trial court does not abuse its discretion in not considering tax consequences when those consequences are speculative. See Day v. Day (1988), 40 Ohio App.3d 155, 159; Jamesv. James (1995), 101 Ohio App.3d 668, 688; Guidubaldi v. Guidubaldi
(1990), 64 Ohio App.3d 361, 367-368. Since there is no evidence in the record that appellee will be required to, or even plans to, sell his interest in Twinwall, any consideration of the tax consequences is purely speculative. Therefore, the trial court did not abuse its discretion in not considering the tax consequences in the event that appellee must sell his interest in Twinwall, and appellee's second cross-assignment of error is found not well-taken.
In his third cross-assignment of error, appellee contends that the trial court erred in not awarding him a distributive award equal to the amount of money he expended in attorney fees in defending himself against appellant's litigation in the general division. In essence, appellee claims that appellant engaged in financial misconduct entitling him to a distributive award pursuant to R.C. 3105.171(E)(3).[4] Ruling on appellee's motion on this same subject, the trial court stated that, since it had determined that the marriage was de facto terminated in 1991, and since the property was valued at that time, any funds that appellee used to defend himself in the civil action were separate, and not marital, funds. See Decision of June 15, 1999. As such, according to the trial court, appellant did not engage in financial misconduct with marital assets. We find no abuse of discretion in the trial court's holding. Consequently, appellee's third cross-assignment of error is found not well-taken.
On consideration whereof, we find that substantial justice has been done appellant, and the judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is affirmed in all respects as it relates to appellant and her assignments of error. We find that substantial justice has not been done appellee, and the judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is reversed as to appellee's first cross-assignment of error. It is ordered that appellee is entitled to a set-off equal to the amount of spousal support that he overpaid. It is therefore also ordered that the judgment in favor of appellant for $44,600 plus six percent simple interest is amended to $37,888 plus six percent simple interest ($44,600 less the $6,712 overpayment), to be paid to appellant in ten annual installments. The judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is affirmed in all other respects. Each party is to bear their own court costs.
Peter M. Handwork, J., Richard W. Knepper, P.J., Mark L. Pietrykowski,J., JUDGES CONCUR.
 ____________________________ JUDGE
[1] Though both parties have appealed, for ease of discussion, Karen Thyer will be referred to in this decision as "appellant" and Richard Robinson will be referred to in this decision as "appellee."
[2] Apparently, appellant also dismissed and re-filed her petition in 1992.
[3] We recognize that the trial court ordered appellee to begin these payments in February 2000 and that one annual payment may already have been made. We leave it to the parties and their attorneys to determine the correct amount of the annual payment based on the total amount appellee owes to appellant.
[4] R.C. 3105.171(E)provides:
 "(E)(1) The court may make a distributive award to facilitate, effectuate, or supplement a division of marital property. The court may require any distributive award to be secured by a lien on the payor's specific marital property or separate property.
"* * *.
 "(3) If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property."