**In Re the Matter of: Donna T. EVANS\*,**

v.

**Jacob B. EVANS.**

**No. CS95–04043.**

Family Court of Delaware, Sussex County.

Submitted: April 25, 2000.
Decided: Sept. 6, 2001.

\* Pseudonyms have been assigned to the parties to protect their identities.

Mary R. Schrider, Esquire, Tunnell & Raysor, Georgetown, DE, counsel for wife.

George G. Strott, Esquire, Law Firm of George G. Strott, Jr., Salisbury, MD, counsel for husband.

HENRIKSEN, J.

Pursuant to a Rule To Show Cause petition filed on April 25, 2000 by Donna T. Evans ("wife") against Jacob B. Evans ("husband"), the Court is asked to determine whether husband's disability pension from the State of Maryland, which went into effect following the parties' divorce, should be subject to the parties' ancillary Stipulation and Order. The Stipulation and Order awarded the wife an interest in the husband's pension and/or retirement benefits from the State of Maryland and required the parties to enter into a Qualified Domestic Relations Order (QDRO). The QDRO applied a *Cooper* formula with a fifty percent (50%) multiplier. For the reasons set forth hereafter, the Court determines that husband's State of Maryland disability pension was a property interest acquired during the marriage and, therefore, is subject to the equitable division of the Court and the ancillary Agreement and Order of the parties. As such, the wife's interest in the husband's post-divorce triggered disability pension is subject to a QDRO or such other Order as complies with the State of Maryland Pension Fund. However, the value of the allowance husband receives under his disability plan may not necessarily be the same as the value of the allowance he may have received under his service retirement plan which was based predominantly on age and length of service. Therefore, it will be necessary for the parties to consider the difference of these plans and adjust the QDRO or other similar acceptable form of pension allocation Order accordingly. If the parties are unable to reach such an agreement, they will need to seek the additional assistance of the Court by providing as much information as possible comparing the disability retirement plan with the service retirement plan, including setting forth their respective positions on how the Order should read and the reasons therefore.

## FACTS

Husband and wife married on September 28, 1985, and divorced on October 12, 1995, thereby concluding a marriage of slightly more than ten (10) years. At the time of the divorce, husband was forty-one (41) years of age and wife was almost forty-three (43) years of age. At the time of the divorce, husband had been an employee of the State of Maryland and was

entitled to benefits under the Maryland State pension system. In concluding the property matters related to their divorce, the parties each signed a "Stipulation and Order—Ancillary" which was then signed shortly thereafter by a Judge of the Family Court on March 24, 1997. Paragraph Two (2) of the "Stipulation and Order—Ancillary" contained the following relevant language:

> "Petitioner [wife] shall receive her interest in the pension and/or retirement benefits of respondent [husband] pursuant to the entry of a Qualified Domestic Relations Order applying the Cooper formula with a fifty percent (50%) multiplier."

Subsequently on October 20, 1997, the parties signed and submitted a "Stipulated Domestic Relations Order" which the parties believed would carry out the terms of their previously adopted "Stipulation and Order—Ancillary". This first attempt by the parties to enter into an Order that would be accepted by the State of Maryland failed. By letter from the State Retirement and Pension System of Maryland dated November 19, 1997, the parties were advised that the Stipulated Domestic Relations Order that they had signed on October 20, 1997 was rejected by the State of Maryland because it did not comport with certain requirements set forth in Maryland's regulations. Had there not been a change of circumstances, the parties would most likely have cooperated in making the changes required by the State of Maryland. It should be briefly mentioned at this point, that the State of Maryland letter of November 19, 1997 specifically stated "ERISA does not apply to public pensions." This "ERISA" statement will be looked at in more detail later in this Opinion.

On February 18, 1999, wife's attorney sent a new draft of a Domestic Relations Order which had been prepared by working closely with a representative from the State of Maryland Pension Plan. The husband, however, failed to respond to the wife's request that he cooperate in signing the most recently prepared "Amendment to Stipulated Domestic Relations Order."

Because of husband's lack of cooperation, wife filed a Rule To Show Cause petition on April 25, 2000. Husband's refusal to sign the Amendment became apparent in his answer to the Rule To Show Cause petition, wherein husband for the first time disclosed he was on a disability pension, when he stated the following:

> "... [husband] states that subsequent to the original Ancillary Order of March 24, 1997, [husband] retired from the State of Maryland on disability and upon information and belief does not receive any pension upon retirement but only as of now, disability pension through the State of Maryland."

Husband's Memorandum of Law opposing wife's contempt action goes on to clarify this situation by stating that the husband became disabled while working for the State of Maryland after the parties had divorced, and husband then filed for his disability benefits three (3) years after the divorce. Husband's Memorandum goes on to note that he was not scheduled to retire at the time of disability, and that under his normal retirement, he would have not been eligible to retire until he was at least fifty-five (55) years of age.

## LAW AND REASONING

■ Whether disability retirement benefits, received as a result of an injury occurring after a divorce, are properly considered retirement benefits subject to an Agreement and Order entered into between the parties at the time of the divorce, have been treated differently by

various jurisdictions. The husband relies on a series of cases which hold that disability benefits are a form of a wage continuation plan and, as such, are likened to workers compensation benefits. In this line of cases, disability benefits which accrue because of a post-divorce related injury are not marital property.[1]

The wife relies on the logic of the several jurisdictions which hold that disability pension payments are a form of deferred compensation and therefore treat them as ordinary pension payments.[2]

In the case *sub judice*, husband benefits from the State of Maryland Pension Fund. Maryland Courts have held that disability retirement benefits, received as a result of an injury occurring after the parties' divorce, are properly considered retirement benefits pursuant to a settlement agreement between the parties, which entitled the wife to a share in the portion of her former husband's "pension and retirement benefits" if, as, and when paid to him.[3] In the *Lebac* case, the Maryland Court specifically noted that the disability retirement rights were marital property because the actual contractual entitlements to these rights were acquired as part of the employment during the marriage, despite the fact that the husband eventually was disabled after the marriage.[4] In the *Fultz* case, the Maryland Court stressed that the parties could never have intended that the former wife would have lost all retirement benefits simply because the former hus-

band's retirement arose from something other than a lengthy period of service. The Maryland Court went on to say that the wife's loss of benefits could only occur if there was language specifically excluding disability benefits from the very general and encompassing phrase the parties used in their Agreement of *"pension and retirement benefits."*[5]

In the 1976 landmark decision of *In re Marriage of Brown,* Cal.Supr., 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976), California Supreme Court Justice Tobriner firmly established that pension rights, whether vested or non-vested, are contractual rights derived from the terms of the employee's contract. As such, they are a form of property. The fact that the contractual right is contingent upon a future event does not diminish that contractual right into a mere expectancy. Justice Tobriner's decision emphasized the importance that pension benefits have in marriages, often representing the most important asset of the marital property. Justice Tobriner determined that the pensioner's right was acquired by reason of the employment during the marriage, not by reason of some future contingency following the date of divorce. The only requirement for the employee becoming vested in a plan was the employee's continued employment. Justice Tobriner's decision also advanced the "if, when and as the benefits are paid" approach which has been approved for our Delaware Family Courts to

---

1. See e.g., *Thompson v. Thompson,* Rl. Supr.1994 642 A.2d 1160 (1994); *Ciliberti v. Ciliberti,* Pa.Super., 374 Pa.Super. 228, 542 A.2d 580 (1988); *S.M. Christmas v. B.G. Christmas,* Ok.Supr., 787 P.2d 1267 (1990).

2. See e.g., *In re Marriage of Smith,* Ill.App., 84 Ill.App.3d 446, 39 Ill.Dec. 905, 405 N.E.2d 884 (1980); *Kruger v. Kruger,* N.J.Supr., 73 N.J. 464, 375 A.2d 659 (1977); *Morrison v. Morrison,* Ark.Supr., 286 Ark. 353, 692 S.W.2d 601 (1985).

3. *Fultz v. Shaffer,* 111 Md.App. 278, 681 A.2d 568 (1996) and *Lebac v. Lebac,* 109 Md.App. 396, 675 A.2d 131 (1996).

4. *Lebac v. Lebac,* 109 Md.App. 396 675 A.2d 131 (1996).

5. *Fultz v. Shaffer,* 111 Md.App. 278, 681 A.2d 568 (1996).

follow since the case of *Robert C.S. v. Barbara J.S.*, Del.Supr., 434 A.2d 383 (1981).

Practitioners around the country following Justice Tobriner's 1976 California decision will recall the questions and concerns the parties had in making sure that pension plans would follow the Court's Order. In some cases, attorneys would join a corporation as a third (3rd) party in the divorce action. The situation became more difficult when out-of-state pension plans were involved, and attorneys were often subject to the voluntary compliance of these out-of-state companies. Fortunately, the United States Congress passed the Retirement Equity Act of 1984 (REACT), P.L. 98-397, which became effective January 1, 1985. REACT empowered state Courts to issue a Qualified Domestic Relations Order (QDRO) pursuant to 29 U.S.C. § 1056(d)(3) to bind pension plans, in or out-of-state, and without the necessity of joining a corporation into a divorce action. However, REACT specifically exempted governmental plans pursuant to 29 U.S.C. § 1003(b)(1). Government plans were defined by 29 U.S.C. § 1002(32) to include pension plans maintained by the government of the United States as well as by the government of any state or subdivision thereof.

The case law of certain jurisdictions has made clear that REACT and the Qualified Domestic Relations Orders issued pursuant to REACT do not apply to state pensions.[6] As was earlier noted in the case *sub judice*, the state retirement pension system of Maryland, in its letter to the parties dated November 19, 1997, specifically stated that ERISA does not apply to public pensions. ERISA (Employee Retirement Income Security Act) was enacted in 1974 and amended effectively January 1, 1985, by the Retirement Equity Act of 1984 (REACT). Fortunately, the State of Maryland allows similar types of Orders to be received from other states if they meet with the qualifications of the State of Maryland plan.

Thus, today when a Court wants to bind a pension plan, whether or not the company is in-state or out-of-state, the Retirement Equity Act of 1984 generally applies, and the Court may bind the plan with a Qualified Domestic Relations Order (QDRO). In other situations, where the employee receives his pension from a public entity, we must look to the rules of that particular entity. As seen in the examples of cases footnoted below, one must look to the laws of the state where a state pension is involved.[7] For a federal employee, one must look to the Federal Employee Retirement System Act (FERS)[8] and for a civil servant we must look to the Civil Service Retirement System Act (CSRS). Both FERS and CSRS require a *"Court Order acceptable for processing"* which is reviewed and approved by the Office of Personnel Management (OPM) pursuant to 5 C.F.R. § 538.101(a)(1) and § 538.103.

▮ Certainly, in this case, where a Maryland public entity is involved, it behooves this Court to look to the law of the State of Maryland. As noted previously, in a case very similar to the case at hand, where the

---

**6.** See, for example, *Guidubaldi v. Guidubaldi,* Ohio App., 64 Ohio App.3d 361, 581 N.E.2d 621 (1990); *In Re Marriage of Roehn,* Ill.App., 216 Ill.App.3d 891, 159 Ill.Dec. 891, 576 N.E.2d 560 (1991); and *Furia v. Furia,* R.I.Supr., 638 A.2d 548 (1994).

**7.** See, for example, *Guidubaldi v. Guidubaldi,* Ohio App., 64 Ohio App.3d 361, 581 N.E.2d 621 (1990); *In Re Marriage of Roehn,* Ill.App., 216 Ill.App.3d 891, 159 Ill.Dec. 891, 576 N.E.2d 560 (1991); and *Furia v. Furia,* R.I.Supr., 638 A.2d 548 (1994).

**8.** 5 U.S.C. § 8422.

language of the parties' Agreement stated that it would protect the wife's interest in *"the pension and/or retirement benefits"* of husband, the Maryland Court held that disability retirement benefits are part of the retirement benefit package of the husband, especially where the disability benefits were not specifically excepted from the Agreement.[9]

In reviewing Delaware decisions on this specific issue, our Delaware Supreme Court issued an Order on October 5, 1990 in the case of *Courtney v. Plitt,* 582 A.2d 934, which held that the disability retirement income wife received from the Commonwealth of Pennsylvania was not a replacement for wages. Instead, the Supreme Court held that those disability retirement payments were a pension, and within the scope of the parties' pension distribution agreement. The Delaware Supreme Court also noted that the wording of the parties' agreement did not distinguish between pensions based on age and service and those based on disability.

Thus, in this case, the wording of the parties' Stipulation and Order broadly encompassed the wife receiving her interest in *"pension and/or retirement benefits"* of the husband, without taking specific exception to disability payments. Both the State of Maryland, where the pension is administered, and the State of Delaware, which has jurisdiction over the divorce, agree that disability pension benefits which are contracted by reason of employment during the marriage, but which are triggered by the disability occurring following a divorce, are to be treated as pension benefits. Husband's disability benefits, therefore, are controlled by the Stipulation and Order entered by this Court on March 24, 1997.

It should be noted that this decision does not address the situation where the state administering the plan is one of those jurisdictions that has determined that post-divorce triggered disability benefits are not marital property.

## AMOUNT OF BENEFITS AND RETROACTIVE PAYMENTS

■ Having determined that the husband's disability pension is a marital asset, there remains to be determined whether it is fair and equitable for the wife to presently and retroactively receive what would almost amount to fifty percent (50%) of husband's present disability payments. This would be the case if the Court followed the specific language of the parties' Order which specified a *Cooper* formula with a fifty percent (50%) multiplier. The Court suspects such an application would work an inequitable hardship on the husband which was not contemplated by the parties in their original agreement. Because the Court does not have sufficient information to make this determination, the parties must obtain more information and thereafter either decide this by agreement or return to the Court. In the case of *Lookingbill v. Lookingbill,* Md.Ct.App., 301 Md. 283, 483 A.2d 1 (1984), the Maryland Court noted that the allowance under a service pension plan may well differ from the allowance of a disability pension plan.

The wife's pleadings suggest that husband began receiving his accidental disability payments on August 1, 1998 in the gross amount of $1,827.69 per month. Wife asserts that she is entitled to fifty percent (50%) of what husband has received in these disability retirement benefits from the State of Maryland since the date of its inception until the date pay-

**9.** *Fultz v. Shaffer,* 111 Md.App. 278, 681 A.2d 568 (1996).

ments can begin directly from the plan pursuant to the Amended Order. The Court disagrees. First of all, the parties Stipulation and Order dated March 24, 1997, in addition to having a fifty percent (50%) multiplier, refers to the application of a *"Cooper"* formula. The parties subsequent Stipulated Domestic Relations Order dated October 20, 1997, although rejected by the State of Maryland for various reasons, reflects that the parties understood that the *Cooper* formula involved the total number of months married while the husband/participant was employed as the numerator, and the total number of months the husband/participant was employed under the plan. Since the parties were married for one hundred twenty (120) months during which the Court must assume the husband was employed under the plan, the Court must also assume that the husband worked an additional thirty-four (34) months when, according to wife's speculation, husband began receiving his disability benefits. This would therefore reduce the wife's entitlement to husband's monthly disability pension to slightly less than fifty percent (50%) of the monthly payment. The Court is not aware from the information provided whether the husband was employed and receiving entitlements to the pension plan prior to the parties' marriage. Certainly, if he was, these months should also be added to enlarge the denominator of the *Cooper* equation.

The more troubling question is whether the denominator of the total number of months husband worked under the plan should be increased to include the number of months husband would have worked until he would have first become eligible to retire, not under disability, but under a service plan, at age fifty-five (55). By the Court's calculations, this would be approximately an additional one hundred twenty-eight (128) months beyond the August 1, 1998 date when it is suggested husband started receiving his disability benefits. If the Court's math is correct, this would therefore make the denominator in the *Cooper* equation, assuming the husband started his employment on day one (1) of the marriage, to be two hundred eighty-two (282) months. The two hundred eighty-two (282) months is comprised of the one hundred twenty (120) months during the marriage, the thirty-four (34) additional months until the time husband started receiving disability benefits, and an additional one hundred twenty-eight (128) months until the time husband would have attained the age of fifty-five (55), at which time both parties had expected husband would have been eligible to retire under his regular service pension plan.

Not only does a *Cooper* formula envision the numerator/denominator identification of months as set forth above, it also envisions an "if, as, and when" approach as to when payments would, if ever, begin. It is conceivable that under certain types of plans the pensioner's spouse ("alternate payee") would die before the pensioner ("participant") was entitled to receive a benefit, and, as such, the alternate payee would not receive a benefit. In such a case, it seems clear that the alternate payee entered into an agreement not expecting to receive a payment for several years, and, where the participant spouse suddenly becomes disabled and begins receiving a disability pension, it would not be unreasonable to expect the alternate payee to have their immediate payments diminished by an equation which would take into account the overall anticipated length of service of the participant spouse had the participant spouse not become disabled. Perhaps it would not be unreasonable to even delay the payments to the alternate payee wife until the husband attains the

age of fifty-five (55). Several reasonable arguments can be made.

The situation becomes more complicated when the Agreement and Order does not limit itself solely to providing a right in the future pension, but, also provides for alternative survivorship plans to be paid to the alternate payee in the event the participant spouse dies before his entitlement, or after they both have been receiving a portion of the pension pursuant to their Stipulation and Order. A review of the Stipulation and Order in the case *sub judice* reveals that such extra precautions were taken so that the wife would have some additional protection. It is somewhat unclear to the Court, however, whether husband took the necessary action with the Maryland authorities to protect wife's survivor benefits, or whether these survivor benefits even existed. Certainly, if the survivor benefits existed, and the husband has failed to take the necessary action to protect those benefits for the wife, and those benefits, because of husband's failure, cannot now be obtained, this Court would be less inclined to reduce the amount of wife's entitlement to husband's disability. If husband has failed to take the necessary timely action to protect wife's rights in a potential survivor plan, the Court would similarly be less inclined to delay wife's receipt of payments until husband attained age fifty-five (55).

The Court believes the parties should also learn sufficient facts from the plan to be able to draw a comparison between the monthly amount husband receives by reason of his disability retirement at age forty-four (44) (assuming he worked until August of 1998) as compared to what his monthly service retirement amount would have been had he presently attained age fifty-five (55) and started to receive his normal retirement. The Court has no way of knowing whether the Maryland pension

plan factors in some ratio to reflect that they are paying a certain amount for disability retirement where service is less than the anticipated length of normal work compared to what they might pay had the employee given his full number of years of service to age fifty-five (55).

Because of the many unanswered questions noted above, this Court can only envision certain issues that it would consider in determining the appropriate formula equation both as to the present Order to go to the company, as well as in calculating the amount, if any, due the wife retroactively. The parties may also have other valid concerns which they may want to bring to the Court's attention. To do so, however, the parties need to learn more about normal service plans, the disability plan, and the survivor elections. In this way, the parties will be better armed with the facts which may lead them to an agreement. If the parties are unable to agree, they will at least be in a better position to educate the Court in seeking the Court's direction.

### ATTORNEY'S FEES

■ The Court denies the application of either of the parties for costs and attorneys fees. The parties Stipulation and Order dated March 24, 1997 does not contain a clause providing for an award of attorney's fees. Also, considering the split of authority on this issue throughout the United States, the Court is unable to conclude that either of the parties took an unreasonable position.

### CONCLUSION

In conclusion, and based upon the foregoing, the Court finds the following:

1. Husband's disability benefits he receives from the State Retirement and Pension System of the State of

Maryland are pension and/or retirement benefits within the meaning of Paragraph Two (2) of the parties' Stipulation and Order dated March 24, 1997.

2. The Court has insufficient information before it to determine what amount or ratio, and what timing should be followed in its application of the present Pension Order to be sent to the State of Maryland, as well as in the calculation of the amount due the wife going back to the date of husband's first receipt of disability benefits up until such time as the Maryland pension system begins payment to the wife under the Pension Order. As such, the parties will either need to come to an agreement on these amounts and manner of payment, or to submit this matter, with further details and argument, for the Court's determination. If the parties must submit this matter for the Court's further determination, they shall either present Briefs along with a Stipulation of Facts on which the Court can rely, or this matter shall be set for a hearing.

3. Each party's request for attorney's fees is **DENIED**.

**IT IS SO ORDERED**.