JOURNAL ENTRY and OPINION
This is an appeal of the judgment entered by Domestic Relations Judge Kathleen O'Malley that granted appellant Thomas J. Kaiser and appellee Christine M. Kaiser mutual divorces, adopted an agreed shared parenting order, divided the couple's marital property, and mandated that he pay $1,393.46 in child support, $2,000 in spousal support and half of the private school tuition of the Kaisers' children. We find that the judge did not adequately specify her reasons for the award of spousal support or the inclusion of the tuition obligation and reverse in part and remand.
The record reveals that Kaisers were married on August 2, 1980 and have four children, ages eleven to eighteen. Kaiser is a lawyer who began his legal career with an insurance defense firm in 1982 and was made an equity partner in 1990. His average salary throughout his tenure with the firm was approximately $73,000 a year.[1] In late 1998, he was re-classified and agreed to a contract at a flat salary of $90,000 for the year 1999, which was not renewed. He accepted the position of Chief Assistant Director of Law for the City of Cleveland, as head of its litigation section, at a yearly salary of $70,000.
Ms. Kaiser was the Recreational Director for the Village of Bratenahl, earning $12 an hour, and averaged roughly $20,000 a year as income in the two years preceding the final entry granting the parties' divorce. She has a Bachelor of Science degree and is taking courses to gain teaching certification in math and science.[2] She is the residential custodial parent for the children and remains with them in the family's home in Bratenahl.
Ms. Kaiser filed for divorce on May 28, 1998 and, through an agreed journal entry of October 7, 1998, Kaiser agreed to pay, pending the final outcome of the case:
*Child support of $850 per month;
 *The family home monthly mortgage payment of roughly $1,000;
*The home and car insurance for the family;
 *Payment of the children's private school tuition (at the time, $2,100 a year total for the three children in elementary school and $7,000 for their son's private high school);
 *Medical expenses for the children and provision of health insurance.
As the case proceeded, several changes in circumstance occurred for the family: the second son enrolled as a freshman in a private high school without consultation with Kaiser; the eldest son obtained a driver's license, was included as a driver on the family car insurance, and Ms. Kaiser added new coverages, which doubled the yearly premium to almost $4,000; and Kaiser left his law firm, where he had earned $130,000 during each of his prior three years, for public service at almost one-half that salary. It is against the backdrop of these facts that the judge ultimately assigned the parties' financial obligations divorce decree in 2000.
The final decree of divorce assigned the following obligations for Kaiser.
*Spousal support: $2,000/month for six years;
 *Child support: $1,326.92/month, presumably to be adjusted as each child becomes emancipated;
 *One-half the children's yearly private school tuition (about $7,700);
 *85% of any uninsured, unreimbursed medical expense for the children past the first $100.
He was awarded the following property:
 *An interest in his 401(k), once the net value of the marital home and Ms. Kaiser's PERS account are deducted from her own half interest ($155,907);
 *His automobile, boat, camper and mobile home ($4,500, collectively);
 *Half of the tangible goods in the marital home not used by the children.
The decree gave Ms. Kaiser the duties of:
*Residential, custodial parent;
*Providing health insurance for herself and the children;
 *Payment of the first $100 in annual out-of-pocket health care costs for the children, and 15% of any uncovered medical expense after that;
 *One-half the children's private school tuition; and she was awarded:
*The marital home ($128,162.77 equity);
 *An interest in Kaiser's 401(k) as described above ($22,291);
*Her PERS retirement account ($5,355);
*Her car ($6,000);
 *Half the tangible property in the marital home not used by the children;
 *Arrearage for private school tuition incurred prior to the final divorce decree ($6,757.50).
In addition, the parties were ordered to split certain accounts receivable and unbilled time that Kaiser had or would receive as a former partner of the law firm. At the time of the divorce, Kaiser was entitled to a cash payment of $15,691.43 while an additional $29,669.32 in uncollected fees and unbilled time remained as possible income from his old firm. Testimony had indicated that collection of those fees was speculative at best, and it may well be written off as uncollectible. The journal entry does not indicate who is responsible for the children's car insurance.
Kaiser assigns four assignment of errors which we will take in reverse order:
 IV. THE TRIAL COURT ERRED IN THE DIVISION OF MARITAL ASSETS BY FAILING TO TAKE INTO ACCOUNT THE TAX CONSEQUENCES OF SAME, BY FAILING TO REQUIRE WIFE TO RE-FINANCE THE MORTGAGE ON THE MARITAL RESIDENCE, AND BY OFFSETTING THE PRE-TAX ASSETS (THE HUSBAND'S 401[K]) AGAINST THE AFTER-TAX ASSETS (THE MARITAL RESIDENCE) ON A DOLLAR FOR DOLLAR BASIS.
A reviewing court will not conduct an item-by-item review of a judge's determinations or interfere with his broad discretion to equitably divide marital property upon a divorce unless, viewing the totality of the circumstances, a judge abused that discretion.[3] An abuse of discretion implies that the court's attitude was unreasonable, arbitrary or unconscionable.[4] * * * But, when applying an abuse of discretion standard, a reviewing court may not substitute its judgment for that of the judge and must be guided by a presumption that the findings are correct.[5] In order for there to be an abuse of discretion, "the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias. * * *"[6]
The division of marital property must be guided by the factors listed in R.C. 3105.171(F):
(1) The duration of the marriage;
(2) The assets and liabilities of the spouses;
 (3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
(4) The liquidity of the property to be distributed;
 (5) The economic desirability of retaining intact an asset or an interest in an asset;
 (6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 (7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 (8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 (9) Any other factor that the court expressly finds to be relevant and equitable.
Clearly, tax consequences are but one of the factors to be considered,[7] but Kaiser contends that it should have been the overriding consideration. Although he did include this point in his written final argument to the judge and, therefore, preserved it, he has not shown that the division here is inequitable, even assuming Ms. Kaiser obtains her teacher certification and finds a job with a better salary. This change in circumstance would possibly affect spousal and child support, if anything.
While a party may argue that the correct valuation of a retirement benefit like a 401(k) plan is through its present cash value, if the judge does not actually order the liquidation of the asset, offsetting hard assets against the value of the 401(k) without a pre-tax/redemption adjustment of the 401(k) has been held to be proper.[8] Additionally, * * * several cases note that a trial court does not abuse its discretion in not considering tax consequences when those consequences are speculative.[9] Since there [was] no evidence in the record that [a party would] be required to, or even [plan] to, sell his interest in [real estate], any consideration of the tax consequences [would have been] purely speculative.[10] Here, it is undisputed that the judge did not mandate liquidation of Kaiser's 401(k).
Under the marital property division sub judice, Kaiser has been awarded $168,252 in assets and Ms. Kaiser received $161,808. Although Kaiser has argued that he will bear all the income tax liability should he ever receive any remaining entitlements from his old law firm, and the judge also adopted Ms. Kaiser's position in her final written argument that, given her income, re-financing the mortgage on the marital home was not currently feasible, we cannot find the overall property division effected here to be palpably and grossly violative of fact and logic and consequently find no abuse of discretion. This assignment of error has no merit.
 III. DEVIATION FROM THE STANDARD CHILD SUPPORT GUIDELINES BY ORDERING THE PAYMENT OF PRIVATE SCHOOL TUITION IS NOT PERMITTED WHERE NO EVIDENCE IS TAKEN CONCERNING THE BEST INTERESTS OF THE CHILDREN.
Private school tuition is a form of child support, and an appellate court may invalidate a child support order if it finds an abuse of discretion because the award was arbitrary, unreasonable, or unconscionable.[11] Allocation of an amount of support either above or below the presumptively legally correct statutory schedule set forth in R.C. 3113.215 is not proper unless the court issues findings of fact stating why the guideline support amount is * * * unjust or inappropriate and not in the best interest of the child.[12] Appropriate reasons for departing from statutory guidelines to allocate the responsibility for private school education between parents, as enumerated by statute[13]
and validated by prior case law, include the special needs or educational opportunities of a given child,[14] the prior agreement between the couple that private education would have been provided had they remained married, and the relative abilities of the parties to absorb such an expense.[15]
Here, Kaiser, while he was a partner in a substantial law firm, assumed the obligation to pay the children's tuition, then totaling over $9,000 a year, pending the outcome of the divorce. Circumstances that have changed since the October 7, 1998 agreed entry establishing this obligation, however, include the addition of a second $7,000 high school tuition cost and the large decrease in Kaiser's income. Despite Ms. Kaiser's argument that Kaiser had attended a private high school and their children had always gone to private schools, there was no evidence of an implicit understanding that the children were all to attend private schools. Further, given the current financial condition of these parents, even had they had remained married, providing such an education would seem economically impossible. Therefore, the decision to allocate half of the children's private school tuition to each spouse, which is neither ordered by statute nor supported by the record, must be reversed.
To the extent that Kaiser was required to pay private school tuition pending a final divorce order (i.e. assigned arrearage), the agreed order from October 7, 1998 controls the parties' obligations, and if he had a problem with that tuition until the final decree, he should have raised it with the judge as soon as he had knowledge of it. Since he did not, he waived any error about tuition expense arrearages.
 I. THE TRIAL COURT COMMITTED A GROSS ABUSE OF DISCRETION BY ENTERING A SUPPORT ORDER WHICH LEAVES HUSBAND $27.18/MONTH FROM NET INCOME.
 II. A SPOUSAL SUPPORT ORDER WHICH DOES NOT REFERENCE THE FACTORS UPON WHICH IT IS BASED IN SUFFICIENT DETAIL TO FACILITATE APPELLATE REVIEW DOES NOT SATISFY ORC 3105.18 AND WILL NOT STAND.
Since these two assignments of error are interrelated, they will be discussed together. Here, Kaiser points out that he has an after-tax monthly take-home pay of $3,995.76. After a deduction of $1,326.92 for child support, he is left with $2,668.84. He questions the award of $2,000 per month in spousal support that the judge made without stating the reasons for, or the logic supporting, it.
Spousal support is allocated according to the factors found in R.C. 3105.18(C)(1):
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 [3105.17.1] of the Revised Code;
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
* * *
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
A reviewing court may not modify or reverse a judge's decision unless it was either arbitrary, unreasonable or unconscionable.[16]
While Kaiser has a much greater income potential than Ms. Kaiser, each party to a divorce, as a matter of existence, needs to be able to meet reasonable expenses, if possible. The award of $2,000 per month in spousal support leaves Kaiser with $668.84 per month for living expenses, and he has no other assets on which to live other than his 401(k) plan; any withdrawal from the plan would carry large penalties and tax liability.[17]
A $2,000 monthly spousal support obligation, considering the totality of the circumstances, is unduly burdensome and unconscionable. Ms. Kaiser's after-tax wages at the time of divorce were $1,544.83 per month. Although spousal support is subject to taxation, to impose a monthly $2,000 spousal support obligation creates a huge court-ordered disparity in income between the parties, which cannot be, and was not, justified based on the record.
In addition, when making an award of spousal support, a judge is required to consider all of the listed factors and must indicate the basis for his or her award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law.[18] Here, the judge assigned the award without articulating the reasons for it in any detail, although she did preface her conclusions of law with a basic summary of the facts of the case. Accordingly, we are in no position to review which factors or facts were given weight in reaching the spousal support amount and remand for an explanation of such basis.
As such, the first, second and third assignments of error have merit, mandating remand for reconsideration of tuition allocation and spousal support amount according to the criteria set out by statute.
Judgment reversed in part and remanded.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas, Domestic Relations Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, P.J. and PATRICIA A. BLACKMON, J. CONCUR
[1] His starting salary was $25,000; in his later years as a partner he made roughly $120-130,000 a year, and, because the firm operates on a draw/accounts receivable payment system wherein partners are basically paid quarterly for the last year's profits, he made approximately $230,000 his last year with the firm, which included his $90,000 contract-partner salary (compared to actual losses in his first two years as a partner).
[2] She planned to complete her certification by 2001, at which time she hoped to find full-time employment as a teacher.
[3] Andras v. Andras (Apr. 4, 1996), Cuyahoga App. No. 69339, unreported.
[4] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140.
[5] Focke v. Focke (1992), 83 Ohio App.3d 552, 615 N.E.2d 327.
[6] State v. Jenkins (1984), 15 Ohio St.3d 164, 222, 473 N.E.2d 264.
[7] R.C. 3105.171(F)(6).
[8] Krause v. Krause (Dec. 6, 1991), Lucas App. No. L-90-251, unreported.
[9] See Day v. Day (1988), 40 Ohio App.3d 155, 159, 532 N.E.2d 201; James v. James (1995), 101 Ohio App.3d 668, 688, 656 N.E.2d 399; Guidubaldi v. Guidubaldi (1990), 64 Ohio App.3d 361, 367-368,581 N.E.2d 621.
[10] Thyer v. Robinson (Nov. 30, 2000) Lucas App. No. L-00-1089, unreported.
[11] Booth v. Booth (1989), 44 Ohio St.3d 142, 541 N.E.2d 1028; see, also, Beck v. Beck (Dec. 16, 1999), Cuyahoga App. No. 75510, unreported.
[12] R.C. 3113.215(B)(1).
[13] See R.C. 3113.215(B)(3)(a)-(p).
[14] Beck v. Beck, supra; R.C. 3113.215(B)(3)(a).
[15] Wilson v. Wilson (Feb. 1, 2001), Cuyahoga App. No. 77798, unreported; Brock v. Brock (Nov. 17, 1995), Montgomery App. No. 15075, unreported; R.C. 3113.215(B)(3)(l) and (n).
[16] Brock v. Brock, supra; Beck v. Beck, supra; R.C. 3113.215(B)(3)(g), (k), (l) and (n).
[17] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140.
[18] While Thomas argues that his take-home pay has been reduced to $27.18, we use the amount $668.84 based on our ruling on his third assignment of error which requires the judge to revisit the allocation of private school tuition.